___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

APR 22 2014

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Magistrate Judge James P. Donohue

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>NATHAN BRASFIELD,<br><br>Defendant. | NO. MJ 14-163<br><br>COMPLAINT FOR VIOLATION<br><br>18 U.S.C. § 922(g)(1) |

BEFORE, James P. Donohue, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT 1
### (Felon in Possession of a Firearm)

On or about April 22, 2014, in Lake Forest Park, within the Western District of Washington, the defendant, NATHAN BRASFIELD after having been convicted of the following crimes punishable by imprisonment for a term exceeding one year, to wit:

*Possession of Stolen Property in the First Degree*, in the Superior Court of Washington for King County, cause number 01-C-01700-8SEA, on or about May 31, 2011;

COMPLAINT/BRASFIELD - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Possession of Stolen Property in the Second Degree*, in the Superior Court of Washington for King County, cause number 01-C-01700-8SEA, on or about May 31, 2011;

did knowingly possess in and affecting interstate and foreign commerce, the following firearms:

    a.    Vector Arms .223 rifle;
    b.    Glock 17, 9 millimeter pistol;
    c.    FN Herstal, 5.7 x 28 handgun;

which had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 922(g)(1).

The undersigned complainant, Michael Baldino, being duly sworn, further deposes and states as follows:

## INTRODUCTION

1.    I am a Special Agent with the Federal Bureau of Investigation and have been since January 2013. Before becoming an FBI agent, I was a professional firefighter, as well as an emergency medical and hazardous materials technician with Fairfax County Fire and Rescue Department in Virginia. As an FBI Special Agent, I have investigated, received training, and have field experience investigating the various criminal violations over which the FBI has jurisdiction, including domestic and international terrorism, crimes against children, illegal narcotics, and other violations of federal statutes. I have acquired knowledge and information about these offenses and the methods by which they are executed, through formal and informal training, other law enforcement officers and investigators, informants, as well as through my participation in other investigations.

2.    As a law enforcement officer, I have participated in the execution of numerous arrest and search warrants, which have resulted in arrests, convictions, and the recovery of evidence and contraband. I am currently assigned to the Seattle Division's

Domestic Terrorism Squad on the Joint Terrorism Task Force, which investigates criminal violations relating to incidents of both domestic and international terrorism.

3. The facts set forth in this Affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint, it does not set forth each and every fact that I, or others, have learned during the course of this investigation.

## SUMMARY OF PROBABLE CAUSE

### A. NATHAN BRASFIELD's Background

5. I have reviewed the criminal history for NATHAN BRASFIELD. He has seven felony convictions: possession of stolen property (2011); possession of stolen property (2011); theft of telecommunication services (2003); possession of stolen property (2003); taking motor vehicle without permission (2000); taking motor vehicle without permission (2000); and possession of stolen property (1999). All of these convictions occurred in the State of Washington. I have obtained certified copies of his convictions.

### B. BRASFIELD's Contact with a Confidential Source

6. In July 2012, a confidential source (the "CS") reported that he had met with BRASFIELD.[1] The CS said that BRASFIELD had removed a lunch bag from BRASFIELD's truck, which the CS described as being a four-door truck with a camper on the back containing a hatchback. The CS said that BRASFIELD removed from the

---

[1] The source has prior assault and multiple gross misdemeanor convictions.

COMPLAINT/BRASFIELD - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  bag a metal square tool and "metal assembly." BRASFIELD said that the metal piece
2  was a "trigger assembly" for a firearm.
3       7.      The CS said that he/she met with BRASFIELD and another witness later in
4  July 2012. During their meeting, BRASFIELD said, "I want to show you something
5  cool." BRASFIELD then reached into the trunk of the car he was driving, which the CS
6  described as being a silver Mercedes sedan. BRASFIELD displayed two long guns that
7  had been concealed by several items of clothing. One of the weapons was partially
8  disassembled. The other one appeared to be intact. BRASFIELD showed the CS a
9  magazine that appeared to be fully loaded with ammunition. According to the CS,
10 BRASFIELD inserted the loaded magazine into the intact long gun. The CS described
11 the ammunition as brass-colored and long. The CS observed two different magazines in
12 the trunk of the Mercedes sedan that day. One was curved and the other was straight.
13 According to the CS, BRASFIELD said that they were for the two different weapons in
14 the trunk. BRASFIELD said that he had modified the intact weapon to allow it to fire in
15 both semi-automatic and fully-automatic modes. BRASFIELD specifically showed the
16 CS the square portion of the firearm that BRASFIELD claimed to have modified.
17 According to the CS, BRASFIELD also demonstrated how the intact weapon had a
18 collapsible stock.
19      8.      The CS has experience with air rifles and was confident that both of the
20 weapons in BRASFIELD's trunk were not air rifles. Specifically, the CS noted that the
21 assembly and ammunition were totally different than the air rifles and associated pellets
22 commonly associated with air rifles.
23      9.      According to the CS, BRASFIELD acknowledged to the CS that it is illegal
24 for him to handle or possess weapons and ammunition as a convicted felon.
25 BRASFIELD stated that he that did not believe the government had the authority to
26 restrict his access to weapons under the Second Amendment. BRASFIELD asked the CS
27 to go shooting at an outdoor location to demonstrate the modifications BRASFIELD had
28 made to the weapons to include shooting them in fully-automatic mode.

COMPLAINT/BRASFIELD - 4

10.     The CS reported that he met with BRASFIELD again in August 2012. According to the CS, BRASFIELD stated that he wanted to go to a friend's expansive, rural property in Snohomish County, Washington, to shoot his weapons. BRASFIELD specifically mentioned wanting to use the privacy of the friend's property to freely shoot his weapons in fully-automatic mode. During this same discussion, BRASFIELD offered to acquire weapons for the CS. BRASFIELD said he would sell the CS pistols or rifles, but that he intended to keep the two long guns he had shown the CS for himself.

11.     According to the CS, he/she spoke with BRASFIELD again on December 10, 2012. BRASFIELD stated that he had recently shot his weapons with a male friend who had a sizeable property in the area of Kitsap, Washington. BRASFIELD indicated that he had shot with this friend on his property "all the time" because he couldn't shoot at the range, given that he could not legally possess firearms or ammunition.

12.     On February 6, 2013, the CS met with BRASFIELD at BRASFIELD's then-residence, in Kenmore, Washington. The CS was wearing an audio and video recording device during the encounter. The CS reported that a red Dodge pick-up truck was parked in the driveway in front of the residence upon their arrival. Within the first three minutes of the CS entering the residence, BRASFIELD stated: "Did I ever tell you, did I ever show you my, my, my baby?" BRASFIELD removed what appeared to be a rifle with a flat top railing and collapsible stock from a closet near the residence's entry and showed it to the CS. The CS believed it was the same intact long gun BRASFIELD had removed from his Mercedes trunk in July 2012. While holding the gun, BRASFIELD told the CS: "You'll notice this has three positions, and it works in all three positions, green tipped penetrators." When the CS inquired as to what BRASFIELD meant by the penetrators, BRASFIELD explained, "Steel core. Basically those ... armor piercing."

13.     BRASFIELD also acknowledged that he was violating firearms regulations in possessing this specific weapon stating, "Not only is it an SBR [Short Barreled Rifle] like legally the barrel should be out to about here. This thing is compact enough that if I

COMPLAINT/BRASFIELD - 5

had a shorter mag in it, this is a forty round mag, I could totally conceal that under a coat." BRASFIELD showed the CS how this weapon had a collapsible stock and stated, "No, no you can't, you can't have, you cannot have SBRs, you can't have anything fully automatic." BRASFIELD explained: "That's my home defense weapon. If, uh, you know, if somebody's gonna break in here, out in the middle of nowhere here. They're not gonna find the body."

14. In this same meeting, BRASFIELD stated, "Okay the right of the people to keep and bear arms shall not be infringed, shall not. It means, it can't be done... I still have the legal right to possess and bear firearms, guaranteed to me by the Constitution no matter what the fucking government says about it ...unless you're gonna try and make the case that I'm not a person." BRASFIELD described how to skirt the laws prohibiting felons from purchasing weapons stating, "Don't buy it [weapons] through a retail channel. Buy it from a private party." BRASFIELD also stated he had "homemade suppressors" as well as "frangible ammunition that is not gonna leave any fucking marks." During this same meeting, BRASFIELD again asked whether the CS was interested in purchasing a firearm, stating, "So actually the reason I asked about pistols is that I do have an extra Glock 17."[2] BRASFIELD described how this pistol had the original barrel as well as an extended threaded barrel and "pretty much as many magazines as you want for it." BRASFIELD showed the CS what appeared to be a black handgun during the meeting on this date, indicating that it was the Glock, model 17, he was offering to sell him/her. BRASFIELD said that the pistol was able to hold "seventeen rounds, nine millimeters of stopping power, yeah...and the best part about it...nobody knows I have this." BRASFIELD had pulled this pistol from a dark-colored bag the CS had observed on the floor of BRASFIELD's bedroom. BRASFIELD told the

---

[2] FBI Special Agent Kera O'Reilly spoke with a representative from Glock, who confirmed that a Glock firearm would have been manufactured outside the State of Washington. Moreover, I know, based on my training and experience, that the vast majority of firearms are manufactured outside the State of Washington.

COMPLAINT/BRASFIELD - 6

1 CS he was interested in selling this pistol because he didn't need to own all four
2 handguns he currently possessed.

3     15. During this same meeting, BRASFIELD showed the CS a rifle he said he'd
4 modified to allow a blue-colored oil can to screw onto the barrel. BRASFIELD
5 explained that the oil can operated as a silencer. BRASFIELD stored this rifle in a duffle
6 bag in his bedroom.

7     16. On April 30, 2013, the CS telephoned BRASFIELD. The conversation was
8 recorded with the consent of the CS. BRASFIELD told the CS he'd purchased "military
9 door breeching shotgun rounds" through an internet website recently. BRASFIELD said
10 they were being sold for $50 for a box of twenty-five rounds and that he'd purchased
11 forty-three boxes. When the CS asked BRASFIELD if BRASFIELD could get "in
12 trouble" for purchasing ammunition through the internet, BRASFIELD explained the
13 internet system was not set up to check if a purchaser of ammunition was a convicted
14 felon. He further acknowledged that seeing and being able to purchase this type of
15 ammunition was unusual stating, "You don't, you don't see stuff like that in that
16 market... I mean not ya know, not from a legitimate, not from a legitimate store at least."

17     17. The CS advised agents that in August 2013, BRASFIELD was involved in
18 a serious motorcycle accident. BRASFIELD told the CS that he had moved out of his
19 Kenmore residence to stay with his parents for several months to recuperate.

20     18. In September 2013, the CS said that BRASFIELD was extremely
21 concerned that law enforcement was investigating him and that he suspected that his
22 former business partner was the source of those problems. Later that month, the CS
23 reported statements made by a neighbor at BRASFIELD's Kenmore residence. The
24 neighbor said that BRASFIELD's former business partner was observed removing a
25 number of items from BRASFIELD's Kenmore residence while he was in the hospital
26 following his motorcycle accident. The neighbor said that the business partner removed
27 the items without BRASFIELD's consent or knowledge, and that the business partner did
28 so because he believed that BRASFIELD owed him money.

COMPLAINT/BRASFIELD - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C. BRASFIELD's Continued Possession of Firearms

19. On April 4, 2014, the Lake Forest Police Department advised me that BRASFIELD's ex-girlfriend had contacted them about BRASFIELD. She said that BRASFIELD was operating an illegal marijuana grow operation from the basement of his current residence. She also said that her son--who spends time with BRASFIELD at his residence--had seen several guns inside the residence as well.

20. On April 8, 2014, I spoke with BRASFIELD's ex-girlfriend. She said that her four-year-old son had told her that there were guns inside BRASFIELD's residence. Her son had said that BRASFIELD had rules for the guns inside his home, and instructed her son never to touch any of the guns or to point them at anyone. The son said that BRASFIELD kept his guns inside a box located on the floor of his bedroom closet. She said that her son relayed this information to her within the last month or two.[3]

21. On April 15, 2014, I contacted BRASFIELD's ex-girlfriend to arrange a forensic interview with her son regarding the information he provided to her about firearms in BRASFIELD's home. After discussing the nature and extent of the interview, BRASFIELD's ex-girlfriend declined to participate. She said she was already conflicted about her cooperation with law enforcement against BRASFIELD, and did not want her son involved any more than he needed to be in the investigation. She said that she was terrified of BRASFIELD and what he would eventually do to her once he learned about the information she provided. She was willing to continue to assist the investigation, but felt that she would be exposing her son to further harm by having him participate in a forensic interview against his father.

### D. Search of BRASFIELD's Home

22. On April 22, 2014, the FBI executed a search warrant at BRASFIELD's current residence in Lake Forest Park.

---

[3] BRASFIELD's ex-girlfriend reported that he had threatened her on several occasions, and that BRASFIELD had exposed her son to toxic chemicals. BRASFIELD and his ex-girlfriend are believed to have had other current disputes, including about child custody.

COMPLAINT/BRASFIELD - 8

23. Agents located the three firearms mentioned in the charging language of this complaint. Agents located all three of the firearms on the top-shelf of the closet located in the hallway of the second floor of the house. Agents located a rifle scope in BRASFIELD's room, as well as flash suppressors underneath his bed. Agents also located a United States Postal Service box in the living room with the name "Nathan" on it. Agents located multiple boxes of ammunition within this box. BRASFIELD was interviewed after being advised of his *Miranda* rights. He denied possessing the firearms.

24. Two other individuals were in the residence at the time of the search. One of the individuals was the subject of an outstanding Washington State Department of Corrections ("DOC") warrant. BRASFIELD said he knew this individual was wanted, and that he was staying with him. BRASFIELD said he encouraged the individual to turn himself in to authorities. The other individual in the residence was the girlfriend of the individual who was the subject of the DOC warrant. Agents located a Springfield .40 caliber pistol on the shelf in the closet of the bedroom where the individual who was the subject of the warrant appeared to be staying.

25. FBI Special Agent Dennis O'Dell, who has expertise in firearms, examined the three firearms described in the charging language of the complaint. All three firearms were stamped with markings indicating where the firearms were manufactured. Specifically, the markings indicated that the Vector Arms .223 rifle was manufactured in Utah, the Glock 17, 9 millimeter pistol in Georgia, and the FN Herstal, 5.7 x 28 handgun in Virginia. Thus, there is probable cause to believe that all three firearms traveled in interstate commerce.

26. Finally, Special Agent O'Dell examined the Vector Arms .223 rifle and it appears to constitute a short-barreled rifle under federal law. The firearm will be further examined by the Bureau of Alcohol, Tobacco, and Firearms ("ATF").

## CONCLUSION

27. Based on the foregoing, I respectfully submit that there is probable cause to believe that NATHAN BRASFIELD committed the crime of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1).

*[signature]*

Michael Baldino, Complainant,
Special Agent, FBI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 22nd day of April, 2014.

*[signature]*

THE HONORABLE James P. Donohue
United States Magistrate Judge