Judge Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>NATHAN BRASFIELD,<br><br>Defendant. | NO. CR14-155JCC<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States of America, by and through Annette L. Hayes, Acting United States Attorney for the Western District of Washington, and Andrew Friedman and Thomas M. Woods, Assistant United States Attorneys for said District, respectfully submit this sentencing memorandum.

## SENTENCING RECOMMENDATION

The Court should sentence Brasfield to 51 months of imprisonment to be followed by three years of supervised release, subject to the conditions recommended by Probation. In light of Brasfield's apparent poor financial condition, no fine should be imposed. A $100 special assessment is mandatory.

## BACKGROUND

Brasfield has a long history of disrespect for the law. After some juvenile infractions, he was convicted of vehicle prowling in 1997, at the age of eighteen. PSR ¶ 33. While that case was pending, he was convicted of second degree trespass. *Id.* ¶ 35. Later in the same year, he was convicted of second degree theft. *Id.* ¶ 37. Undeterred, he was convicted of possessing stolen property in 1999 at the age of twenty. *Id.* ¶ 39. During that offense, he was caught with stolen credit cards, a stolen firearm, and other stolen property. *Id.* ¶ 40.

The following year, he was convicted of two counts of possession of stolen property. The charges stemmed from two separate incidents. First, he was caught with stolen computers and electronics that had been burglarized from a store—the property taken from the store totaled some $29,000. *Id.* ¶ 42. Second, he was later caught with a stolen van and was connected to another commercial burglary in which computers were taken. *Id.* ¶ 43. He received his first significant sentence as the result of these offenses—14 months. *Id.* ¶ 41.

Upon being released, he was promptly caught driving a stolen van, having burglary tools in his possession, and having the keys to three different makes of vehicles. *Id.* ¶ 44. He was sentenced to only 45 days, and within a month of this conviction, was caught stealing another van. *Id.* ¶ 46. He was sentenced to eight months. *Id.* ¶ 46.

In 2002, he was arrested again. He was caught with a stolen laptop. He was wearing a black jumpsuit and a black hat and had connected the laptop to a telephone junction box outside a building in Tukwila. He was caught sending a harassing message as part of an effort to intimidate a person who was associated with animal research. *Id.* ¶ 50. He was sentenced to a year in jail.

In 2010, he was arrested yet again for possessing stolen property. *Id.* ¶ 53. Officers found that Brasfield's residence was "full of stolen property, including computers, electronic equipment, cameras, and tools." *Id.* ¶ 53. He also had burglary tools in his possession. *Id.* He was sentenced to three months in jail. *Id.*

In July 2012, a confidential source reported that Brasfield had shown him a trigger assembly to a firearm, as well as two rifles. PSR ¶ 6. Brasfield had told the source that he had modified one of the firearms to fire in fully automatic mode. *Id.* Brasfield, a multiple-time felon, could not legally possess any firearms.

In February 2013, the source, wearing a recording device, met Brasfield. Within three minutes of meeting, Brasfield showed the source a short-barreled rifle that he said was capable of firing in fully automatic mode. PSR ¶ 7; Compl. ¶ 12. Brasfield bragged: "Not only is it an SBR [Short Barreled Rifle], like legally the barrel should be out to about here. This thing is compact enough that if I had a shorter mag in it, this is a forty round mag, I could totally conceal that under a coat." Compl. ¶ 13. He stated: "That's my home defense weapon. If, uh, you know, if somebody's gonna break in here, out in the middle of nowhere here. They're not gonna find the body." *Id.*

Brasfield further stated: "Okay the right of the people to keep and bear arms shall not be infringed, shall not. It means, it can't be done… I still have the legal right to possess and bear firearms, guaranteed to me by the Constitution no matter what the fucking government says about it …unless you're gonna try and make the case that I'm not a person." *Id.* ¶ 14. He described how to skirt the laws prohibiting felons from purchasing weapons, stating, "Don't buy it [weapons] through a retail channel. Buy it from a private party." *Id.* He also stated that he had "homemade suppressors" as well as "frangible ammunition that is not gonna leave any fucking marks." *Id.*

During another recorded conversation in April 2013, Brasfield talked about ammunition that he had acquired. He told the source that he had recently purchased "military door breeching shotgun rounds" through an internet website. *Id.* ¶ 16. When the source asked Brasfield if he could get in trouble for purchasing ammunition through the internet, Brasfield explained that the internet system was not set up to check if a purchaser of ammunition was a convicted felon. *Id.* Brasfield further acknowledged that seeing and being able to purchase this type of ammunition was unusual stating, "You

don't, you don't see stuff like that in that market… I mean not ya know, not from a legitimate, not from a legitimate store at least." *Id.*

Brasfield moved out of his home before a search warrant could be executed. In April 2014, law enforcement received information that Brasfield had firearms in his new home. On April 22, 2014, a search warrant was executed at Brasfield's residence. Agents located three firearms in the residence that were tied to Brasfield—two handguns and a short barreled rifle that had been modified to fire in fully automatic mode. PSR . ¶ 10. Agents found in Brasfield's vehicle a trigger group to a rifle capable of firing in fully automatic mode. *Id.*

Agents also found a marijuana grow in Brasfield's residence. PSR ¶ 12. Specifically, agents located forty plants and forty-four baggies of marijuana that appeared to be packaged for sale.[1] *Id.* In addition, agents located yet more stolen property in the residence.

Finally, Brasfield had two persons staying with him at the time of the search. *Id.* ¶ 12. One of the individuals was a six-time felon and a fugitive. *Id.* He had in Brasfield's residence a pistol and heroin. *Id.*

## THE CURRENT CHARGE AND PLEA AGREEMENT

Brasfield was charged with being a felon in possession of a firearm, possessing an unregistered firearm, and manufacturing marijuana. He pleaded guilty to being a felon in possession of a firearm. In the plea agreement, the government agreed to recommend 51 months of imprisonment, with Brasfield free to recommend any sentence. The parties agreed to all but one of the applicable Guidelines adjustments, as addressed below. The plea agreement also contains a waiver of appeal.

//

//

---

[1] Brasfield's marijuana operation was not in compliance with Washington state law.

Sentencing Memorandum (United States v Brasfield, CR14-155JCC) - 4

## SENTENCING GUIDELINES

The government understands that the following Guidelines are undisputed:

| | |
|---|---|
| Base Offense Level | 20[2] |
| Possession of 3 Firearms | +2 |
| Acceptance of Responsibility | -3 |
| Subtotal | 19 |

It is also undisputed that Brasfield's criminal history category is III.

The sole Guidelines issue in dispute is the defense's disagreement with Probation that Brasfield should receive a four-level increase for possessing a firearm in connection with another felony offense under section 2K2.1(b)(6)(B). As Probation correctly concluded, Brasfield should receive the four-point enhancement because he possessed the firearms in connection with his marijuana grow and distribution operation.

The Guidelines commentary provides that the four-level enhancement is applicable where the firearm "had the potential of facilitating" another felony offense. Cmt. 14(a) to USSG §2K2.1(b)(6)(B). The commentary further provides that the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." Cmt. 14(b) to USSG §2K2.1(b)(6)(B). Thus, as long as the firearm was located in "close proximity" to drugs, the enhancement is applicable. This rule reflects the fact that drug dealers frequently keep firearms as protection, given they are unable to call the police in the event they are burglarized. In addition, the firearm need not have been located immediately next to the drugs—as the Seven Circuit has explained:

> Meece argues that the guns were not in close proximity to the drug paraphernalia because the guns were found upstairs while the scale and baggies were found on the main floor and the cash was recovered from the basement. We are unpersuaded by this argument. If, as the district court found, the guns were present to protect against the increased risk of a home invasion, then the bedroom was a logical place to store them. It would do

---

[2] The base offense level is 20 because he possessed a short barreled rifle. *See* USSG § 2K2.1(a)(4)(B).

no good, for example, to keep the guns in the basement rafters with the cash.

*United States v. Meece*, 580 F.3d 616, 621 (7th Cir. 2009); *see also Cox v. United States*, 2011 WL 841070, at *1 n.2 (S.D. Ga. 2011) ("U.S.S.G. § 2K2.1(b)(6) now defines "in connection with" to include situations "in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." How close? Anywhere in the same house, or even across the street, according to the Nicoll court.") (internal citation omitted); *see also United States v. Ferryman*, 444 F.3d 1183 (9th Cir. 2006).

In this case, Brasfield's three firearms were located in an upstairs closet. *See* Exhibit A. Agents located a bag of marijuana packaged for sale near the base of that closet. *See* Exhibit B. In addition, agents located a grow operation in the basement of the residence that contained some forty plants. *See* Exhibit C. Finally, agents observed bins in the main level of the residence that appeared to contain stems and other material from marijuana plants. *See* Exhibit D.

In these circumstances, the enhancement applies. The firearm was located in "close proximity" to drugs, drug manufacturing materials, and drug paraphernalia. In addition, Brasfield indicated that he was concerned about the potential for a home invasion. His drug manufacturing operation is the obvious reason why he would be so concerned.

In sum, the government agrees with Probation that Brasfield qualifies for the four-point addition, and that his total offense level is 23, yielding a range of 57 to 71 months.

## SECTION 3553 ANALYSIS

The Court should sentence Brasfield to 51 months of imprisonment.

*First*, this was a serious offense. At the time of Brasfield's arrest, he had unlawfully possessed multiple firearms, including a short-barreled rifle, which is generally prohibited under the law. He stated his belief that the law didn't apply to him—that he was going to possess firearms and ammunition, despite being a prohibited person. He was operating a marijuana grow, and packaging marijuana for sale. He was

housing a fugitive, who had his own firearm and heroin. Despite multiple stolen property convictions, more stolen property was recovered from his residence.

*Second*, Brasfield has served time in the past, and it has had no deterrent effect. As recounted above, Brasfield has been in and out of prison since he was a young adult. He's served time in jail—including separate stretches of fourteen months and a year. Upon being released, he's simply returned to a life of crime.

*Third*, Brasfield in the past has blamed the mother of his child for many of his troubles. His ire reflects his inability to accept the root of his problems. The mother of his child didn't cause him to possess dangerous weapons, operate an illegal drug enterprise in his house, possess stolen property, or house a fugitive who had a firearm and heroin. Brasfield has no one to blame but himself for his current predicament.

In sum, Brasfield has had a lifetime of second chances. He's returned to a life of crime each time. He should be sentenced to 51 months.

## **OTHER MATTERS**

The government has no objection to the defendant's placement recommendations of either FDC SeaTac or FCI Sheridan. Indeed, the defense presents compelling arguments why Brasfield should be placed at one of these two facilities.

The government also believes that the alcohol condition, contested by the defense, is appropriate. Alcohol can affect judgment—and Brasfield has repeatedly shown poor judgment in the decisions he has made. Brasfield also has suffered from depression and alcohol is a known depressant.

//

//

## **CONCLUSION**

For the foregoing reasons, the Court should sentence Brasfield to fifty-one months of imprisonment.

DATED: March 24, 2015

Respectfully submitted,

ANNETTE L. HAYES
Acting United States Attorney

*s/ Thomas Woods*
ANDREW C. FRIEDMAN
THOMAS WOODS
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7970

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers;

It is further certified that on March 24, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants.

  s/ Thomas M. Woods
THOMAS M. WOODS
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Fax:   (206) 553-0755
E-mail: thomas.woods2@usdoj.gov